UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

JEEHYUNG THOMAS SONG,

                           Plaintiff,                    **DECISION AND ORDER**

       -against-                        21 Civ. 2269 (VB) (AEK)

LAWRENCE C. TURTIL,

                           Defendant.
-------------------------------------------------------------x

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

      By letters dated March 29, 2022 and April 5, 2022, Plaintiff seeks to revise Paragraph

6(b) of the January 20, 2022 Revised Civil Case Discovery Plan and Scheduling Order (the

"Scheduling Order"), ECF No. 40, to allow for service of an additional expert disclosure—

authored by Plaintiff himself—in support of Plaintiff's claims.  *See* ECF Nos. 50, 54; *see also*

ECF No. 56 (Plaintiff's self-authored report).  Defendant opposes Plaintiff's request.

ECF Nos. 52, 58.

      As set forth in greater detail below, Plaintiff's application to revise the Scheduling Order

to extend the deadline for Plaintiff's expert disclosures is DENIED because Plaintiff is not

qualified to serve as his own expert witness in this matter.  The opinions Plaintiff offers in his

self-authored report cannot be used to support his claims in this lawsuit, and any purported

expert testimony that Plaintiff would seek to offer based on his report would be inadmissible.  It

would therefore be futile, and unnecessarily time consuming, to expand the discovery record to

allow for the inclusion of Plaintiff's self-authored report.

**BACKGROUND**

Plaintiff asserts claims against his former psychiatrist for medical malpractice, negligent infliction of emotional distress, and defamation.  *See* ECF No. 15 ("First Amended Complaint").  According to the First Amended Complaint, Plaintiff was Defendant's patient from August 2005 to May 18, 2020, during which time Plaintiff was being treated by Defendant for bipolar disorder, including with individual psychotherapy and medication management.  *Id.* ¶¶ 8-9.  Plaintiff makes various allegations of medical malpractice with respect to the treatment he received from Defendant beginning in February 2020, including Defendant's alleged over-prescription of, and harassment of Plaintiff to take, the medication Risperidone; Defendant's allegedly improper communications with Plaintiff's then wife; and Defendant's alleged failure to provide appropriate care after Plaintiff ceased to be Defendant's patient.  *See generally id.* ¶¶ 12-59.  Plaintiff alleges that he suffered depression and anxiety as a result of Defendant's malpractice and that this has led to damages, including lost wages due to Plaintiff's inability to work; medical costs incurred in seeking treatment for the depression and anxiety; and pain and suffering as a result of the harassment and psychological abuse allegedly inflicted on him by Defendant.  *See id.* ¶¶ 60-62.

According to Plaintiff, "[t]he breaches in standard of care outlined in the First Amended Complaint primarily deal in the doctor-patient relationship with respect to over-prescription of medications, abusive relationship dynamics, disclosing protected health information, failure to provide alternative recommendations, and ethics violations."  ECF No. 50 at 4.  In the instant application, Plaintiff avers that "[t]he scope of my testimony as an expert will be limited to these straightforward concepts, and my 17-year history as a consumer of psychiatric services, qualifies me with specialized knowledge."  *Id.*  Defendant opposes Plaintiff's application for an extension

of the expert discovery deadline on the ground that Plaintiff is not qualified to serve as an expert with respect to the standards of psychiatric care at issue in this case, and that his purported expert report, and any potential expert testimony that would flow from it, cannot be admitted in evidence.  *See* ECF Nos. 52, 58.

* * * * * * * * * *

On January 20, 2022, the Court entered the Scheduling Order, which memorialized the extensions of certain discovery deadlines discussed at the January 12, 2022 status conference. Paragraph 6 of the Scheduling Order set a deadline of March 7, 2022 for service of Plaintiff's expert disclosures (¶ 6(b)), with Defendant's expert disclosures due on March 28, 2022 (¶ 6(c)), and all expert discovery, including expert depositions, to be completed by April 11, 2022 (¶ 6(a)).  ECF No. 40.  Plaintiff filed a letter on March 8, 2022, in which he stated that he had "submitted an expert's disclosure for economic damages on December 16, 2021," but that he would "not be submitting an expert's disclosure for medical malpractice and will not have a medical expert testify on my behalf should the case proceed to trial."  *Id.*  The March 8, 2022 letter set forth Plaintiff's "plan to proceed" at trial by (1) "[r]ely[ing] on Defendant's medical expert to establish standard of care definition, that standard of care was breached, and that breach caused damages through cross examination" and/or (2) "[w]ithdraw[ing] [the] medical malpractice claim and proceed[ing] with [the] negligent infliction of emotional distress and defamation claims."  *Id.*  These positions, among other matters, were addressed at a status conference on March 8, 2022, and based in part on Plaintiff's representations regarding his own expert discovery, the discovery deadlines in the Scheduling Order remained unchanged.  No mention was made at the March 8, 2022 conference or in the March 8, 2022 letter about Plaintiff potentially serving as his own expert.

3

Defendant filed a letter motion on March 25, 2022,[1] specifically seeking a two-week extension of Paragraph 6(c) of the Scheduling Order such that Defendant's expert disclosures would be due on April 11, 2022, and an extension of Paragraph 6(a) of the Scheduling Order to make the deadline for completion of expert depositions April 25, 2022.  ECF No. 48.  The application was granted, and the deadlines for service of Defendant's expert reports and for completion of expert depositions were extended as requested.  ECF No. 49.  In Plaintiff's March 29, 2022 letter,[2] he requests that the court "formally accept [his] [self-authored] expert's disclosure as filed within time as of March 28, 2022."  ECF No. 50 at 5.  Yet because the deadline in Paragraph 6(b) of the Scheduling Order for service of Plaintiff's expert reports had expired on March 7, 2022, service of a new expert report by Plaintiff on March 28, 2022 would not be "within time"; the Court therefore construes Plaintiff's application as a retroactive request to extend the deadline for Plaintiff's expert disclosures from March 7, 2022 to March 28, 2022.

## DISCUSSION

### I.      Applicable Legal Standards

Rule 16 of the Federal Rules of Civil Procedure provides that a scheduling order "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16.

Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert testimony in the federal courts, states as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[1] This letter is dated March 24, 2022, but it was not filed on ECF until 1:13 p.m. on March 25, 2022.

[2] As noted on the docket, *see* ECF No. 51, the letter at ECF No. 50 is dated March 29, 2022 and first appeared on the docket on March 29, 2022, even though the date on the docket for this entry is March 28, 2022.

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions[.]" *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005). "The shift under the Federal Rules to a more permissive approach to expert testimony, however, did not represent an abdication of the screening function traditionally played by trial judges." *Id.* at 396. Rather, "Rule 702 governs the district court's responsibility to ensure that 'any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Id.* (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). Moreover, in *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999), "the [Supreme] Court clarified that, whether a witness's area of expertise was technical, scientific, or more generally 'experience-based,' Rule 702 required the district court to fulfill the 'gatekeeping' function of 'making certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Nimely*, 414 F.3d at 396 (quoting *Kumho*, 526 U.S. at 152) (brackets omitted). "The party seeking to rely on expert testimony bears the burden of establishing, by a preponderance of the evidence, that all requirements have been met." *Arista*

*Records LLC v. Lime Grp. LLC*, No. 06-cv-5936 (KMW), 2011 WL 1674796, at *1 (S.D.N.Y. May 2, 2011).[3]

In determining the admissibility of expert testimony, the "threshold question" for a court is whether a witness is qualified to be an expert. *Nimely*, 414 F.3d at 396 n.11.  To answer this question, "a court must first ascertain whether the proffered expert has the educational background or training in a relevant field by looking at the totality of the witness's background." *Arista Records LLC*, 2011 WL 1674796, at *2 (internal citation, quotation marks, and brackets omitted).  "A witness may be qualified based on any one or more of the qualities listed in Rule 702—knowledge, skill, experience, training or education." *Id.*  Moreover, the court must "compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004).  "The court must ensure that the expert will actually be testifying on issues or subject matters within his or her area of expertise." *Arista Records LLC*, 2011 WL 1674796, at *2 (quotation marks and brackets omitted).  Even if "a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields." *Nimely,* 414 F.3d at 399 n.13.

"Courts in the Second Circuit liberally construe the expert qualifications requirement in that a lack of formal training does not necessarily disqualify an expert from testifying if he or she has equivalent relevant practical experience." *Greasley v. United States*, No. 15-cv-642-A, 2021 WL 935731, at *24 (W.D.N.Y. Mar. 11, 2021) (quotation marks and internal citation omitted).

---

[3] In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) and Local Civil Rule 7.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, copies of this case and other cases that are unpublished or only available by electronic database are being simultaneously mailed to the *pro se* Plaintiff along with this Order.

But while "the qualification requirement is liberally construed, it is not a nullity," and an expert still "must have some specialized knowledge as a result of training or experience." *In re Fosamax Prods. Liab. Litig.*, No. 06-cv-7631 (JFK), 2009 WL 4042769, at *6 (S.D.N.Y. Nov. 23, 2009) (quotation marks and ellipsis omitted), *aff'd sub nom. Flemings v. Merck & Co., Inc.*, 399 F. App'x 672 (2d Cir. 2010).  Furthermore, of particular relevance here, although an expert "need not be a specialist in the exact area of medicine implicated by the plaintiff's injury, he [or she] must have relevant experience and qualifications such that whatever opinion he [or she] will ultimately express would not be speculative." *Loyd v. United States*, No. 08-cv-9016 (KNF), 2011 WL 1327043, at *5 (S.D.N.Y. Mar. 31, 2011) (quotation marks and internal citation omitted).

## II.   Analysis

The obvious purpose of Plaintiff's purported expert report is to support his claim for medical malpractice against Defendant.[4]  "To establish a claim for medical malpractice under New York law, a plaintiff must prove (1) that the defendant breached the standard of care in the community, and (2) that the breach proximately caused the plaintiff's injuries." *Arkin v. Gittleson*, 32 F.3d 658, 664 (2d Cir. 1994).  "It is well established in New York law that unless the alleged act of malpractice falls within the competence of a lay jury to evaluate, it is incumbent upon the plaintiff to present expert testimony in support of the allegations to establish

---

[4] Although the immediate issue before the Court is not whether Plaintiff has a meritorious claim for medical malpractice, the nature of Plaintiff's claims is relevant to the questions of whether an expert witness is needed and, if so, whether Plaintiff is qualified to serve as an expert witness in support of these claims.  *See Gjini v. United States*, No. 16-cv-3707 (KMK), 2019 WL 498350, at *14 (S.D.N.Y. Feb. 8, 2019) ("The Court has already ruled that Plaintiff's case sounds in ordinary negligence and he therefore does not need to present a *medical expert.* However, inasmuch as Plaintiff seeks to present Dr. Klein as a medical expert, the Court now also rules that Dr. Klein is not qualified to serve as a medical expert.") (emphasis in original).

a *prima facie* case of malpractice." *Sitts v. United States*, 811 F.2d 736, 739 (2d Cir. 1987) (quotation marks omitted). "A physician's obligations to his [or her] patient are to possess at least the degree of knowledge and skill possessed by the average member of the medical profession in the community in which he [or she] practices, to exercise ordinary and reasonable care in the application of that professional knowledge and skill, and to use his [or her] best judgment in the application of his [or her] knowledge and skill." *Id.* "In order to show that the defendant has not exercised ordinary and reasonable care, the plaintiff ordinarily must show what the accepted standards of practice were and that the defendant deviated from those standards or failed to apply whatever superior knowledge he [or she] had for the plaintiff's benefit." *Id.* "The requirement that the plaintiff introduce expert medical testimony is imposed in part because without expert assistance a jury will often have no understanding of what constitutes reasonable behavior in a complex and technical profession such as medicine." *Id.* at 740 (quotation marks omitted).

Plaintiff's self-authored report attempts to cast him as an expert on the standard of care applicable to the psychiatric treatment he received from Defendant, particularly with respect to the prescription of medication. *See generally* ECF No. 56 ("Pl.'s Report"). In the section of the report labeled "Sources and Methodology," Plaintiff explains:

> The relevant field under review is psychopharmacology, which is the administration of psychotropic medication in the treatment of psychiatric illnesses. . . . The purpose of the review was not to ascertain whether there were wrong decisions or misdiagnosis, but whether the practice of psychiatry performed by Dr. Turtil breached an acceptable standard of care. The question is not whether the doctor was correct or incorrect, but whether his practices deviated from the treatment the patient would have received from an average doctor with same board designation would provide [*sic*] to the patient.

Pl.'s Report at 3. Plaintiff acknowledges that he is "not a doctor or psychologist," though he adds that he has "been a patient of psychiatric services since August 2005." *Id.* at 2. In his

undergraduate studies, Plaintiff received a Bachelor of Arts, majoring in the philosophy of religion and minoring in sociology. *Id.* He subsequently earned a Master's in Public Administration, "with a degree in finance." *Id.* Plaintiff's work experience involves employment as a credit analyst at Moody's Investors Service, "a credit rating agency that assigns credit scores to countries, for-profit and non-profit corporations, universities, municipalities, and government agencies." *Id.* According to Plaintiff, during his tenure at Moody's, he "obtained financial and legal analytical skills." *Id.* He states that his job function "is to analyze, organize, and present data for consumption by internal experts and market participants," and notes that he has "been trained to be objective, act with integrity, and apply professional skepticism to representations from third parties and data collected in the assessment process." *Id.*

Regardless of whatever analytical skills Plaintiff might have, however, he has no specialized knowledge—based on education, training, or relevant experience—in any area of medicine. While Plaintiff contends that his "17-year history as a consumer of psychiatric services[] qualifies [him] with specialized knowledge," ECF No. 50 at 4, being a patient is not a sufficient qualification to serve as an expert. If that were sufficient, every patient asserting a claim of medical malpractice would be able to serve as an expert in his or her own case, and the "well established" New York law requiring the presentation of expert testimony would be rendered meaningless. A plaintiff must present expert testimony in a medical malpractice case because in the overwhelming majority of cases, the alleged act of malpractice does *not* fall "within the competence of a lay jury to evaluate." *Sitts*, 811 F.2d at 739; *see id.* at 740 ("[I]n the view of the New York courts, the medical malpractice case in which no expert medical testimony is required is 'rare.'"). Here, where the basis for Plaintiff's medical malpractice claim is breaches of the standard of psychiatric care, including the proper administration of prescription

medication, Plaintiff simply does not qualify as an expert.  He therefore cannot offer expert opinions by way of an expert report, nor could he testify as an expert based on the opinions set forth in any such report.  *See Greasley*, 2021 WL 935731, at *13 (court concluded that witness who had a "Bachelor's degree in Health Science and a Master of Health Administration degree, with a specialty in the management of health care facilities/operations," as well as a "license as a Nursing Home Administrator," could not testify "concerning any allegations that sound in medical malpractice" since he had "no medical education, training, licenses, or experience whatsoever"); *Gjini*, 2019 WL 498350, at *14 (concluding that the plaintiff's proffered medical expert was not qualified to testify as a medical expert since he had "no medical education, training, or experience whatsoever. . . .  Nor does he have a degree or any training in pharmacology or clinical experience with prescribing medications, . . . and he has never been engaged in the practice of medicine and has never performed medical procedures on any patients.").[5]

---

[5] It is unclear why Plaintiff argues in his original application for additional time to serve his purported expert disclosure that "[u]nlike toxicology and oncology, the practice of psychopharmacology at bar *is plainly accessible to a layperson*," ECF No. 50 at 3 (emphasis added), since this would undercut the need for any expert testimony on this subject.  In any event, a claim of medical malpractice involving the standards of care applicable in the field of psychopharmacology—which Plaintiff describes in his report as "[t]he relevant field under review"—plainly requires expert testimony.  Plaintiff references the definition of psychopharmacology used by the American Society of Clinical Psychopharmacology ("ASCP")—"the study of the use of medications in treating mental disorders."  ECF No. 50 at 3-4.  And indeed, the ASCP also makes clear that "[t]he complexity of this field requires continuous study in order to keep current with new advances," and that "psychopharmacologists need to understand all the clinically relevant principles of pharmacokinetics (what the body does to medication) and pharmacodynamics (what the medications do to the body)."  *See* "What is Psychopharmacology," *available at* https://ascpp.org/resources/information-for-patients/what-is-psychopharmacology/ (last visited Apr. 26, 2022).  These are not concepts or principles that are plainly accessible to a layperson.  Notably, the ASCP describes a psychopharmacologist as "any *physician* who treats patients with psychotropic medication"—not just any patient who has been prescribed such medications.  *Id.* (emphasis added).

Plaintiff cites the Second Circuit decision in *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038 (2d Cir. 1995), a personal injury case in which the plaintiff claimed she had been exposed to toxic fumes in her workplace and alleged that the exposure led to health problems that forced her to quit her job.  Specifically, Plaintiff focuses on the determination in *McCullock* that "[d]isputes as to the strength of [an expert's] credentials . . . go to the weight, not the admissibility, of his testimony."  *Id.* at 1044; *see* ECF No. 54 at 3.  But in *McCullock*, the defendant challenged the qualification of a doctor as an expert on the ground that "holding a medical degree is not enough to qualify [a doctor] to give an opinion on every conceivable medical question."  61 F.3d at 1043 (quotation marks omitted).  In rejecting this challenge, the panel noted that the expert was "an experienced medical doctor, who is certified by the American Board of Otolaryngology and has practiced in the specialty of ears, nose and throat since 1966."  *Id.*  Thus, the court found "his background sufficient to permit his expert testimony on a throat ailment and its causes," and it rejected the defendant's suggestion that the doctor "had to be a specialist in environmental medicine to provide expert testimony in this case . . . ."  *Id.*  Here, in contrast, the issue is not the strength of Plaintiff's credentials with respect to the questions surrounding his psychiatric care, but rather Plaintiff's total lack of any credentials at all with respect to those questions.  The complete absence of credentials in psychopharmacology, or any field even remotely related to psychopharmacology, renders Plaintiff unqualified to serve as his own expert in this case.  *Cf. Arista Records LLC*, 2011 WL 1674796, at *3 ("If the expert has educational and experiential qualifications in a general field *closely related to the subject matter in question*, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent.") (quotation marks omitted) (emphasis added).

It is plain that Plaintiff does not satisfy the threshold condition of being qualified to serve as an expert in this case.  Accordingly, the Court need not analyze whether Plaintiff's proffered opinions are relevant or reliable, or whether these opinions would assist the trier of fact.  *Nimely*, 414 F.3d at 396 n.11; *see* ECF No. 54 at 1-2.

* * * * * * * * * *

Because Plaintiff does not have the requisite qualifications to serve as an expert in this matter, his self-authored report cannot be used to substantiate Plaintiff's claims in this lawsuit, and any testimony that Plaintiff may seek to introduce based on the report would not be admissible.  It therefore would be futile to allow the discovery record to be expanded to include Plaintiff's self-authored report, and it would be unnecessarily burdensome and time consuming to require Defendant's expert to substantively address the assertions made by Plaintiff in the report.  Accordingly, there is no "good cause" to extend the deadline for Plaintiff to serve his self-authored report as a purported expert report, and Plaintiff's application to revise the case management plan to extend the deadline for Plaintiff's expert disclosures is DENIED.

## CONCLUSION

For the foregoing reasons, Plaintiff's application to revise the case management plan to extend the deadline for Plaintiff's expert disclosures is DENIED.

In light of this decision, the deadline for the completion of expert depositions is hereby extended to May 6, 2022.

If Plaintiff wishes to raise objections to this nondispositive Decision and Order, he may serve and file such objections within 14 days after being served with a copy of the Decision and Order, in accordance with Rule 72(a) of the Federal Rules of Civil Procedure.

Dated: April 27, 2022
      White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge

A copy of this Decision and Order has been mailed to the *pro se* Plaintiff by Chambers at Plaintiff's address of record on the docket as of the date of the Order.

13